UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SPECIALTYCARE, INC., REMOTE NEUROMONITORING PHYSICIANS, PC, and SENTIENT PHYSICIANS, PC,<br><br>　　　Plaintiffs,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. 25-cv-1807<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND PETITION TO CONFIRM ARBITRATION AWARDS**

Plaintiffs, SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "SpecialtyCare"), bring this action against Defendant, Cigna Health and Life Insurance Company ("Cigna") and allege as follows:

**I.　　INTRODUCTION**

1.　　This action is necessary because Cigna has failed and/or refused to pay SpecialtyCare the money that it was ordered to pay in arbitral awards rendered pursuant to the federal No Surprises Act ("NSA").

2.　　SpecialtyCare therefore brings this action to recover $886,879 in out-of-network ("OON") reimbursement pursuant to awards issued to SpecialtyCare against Cigna under the NSA, plus pre- and post-judgement interest, costs of collection, and its reasonable attorneys' fees.

3.　　SpecialtyCare is recognized as a leading national healthcare provider of perfusion and intraoperative neuromonitoring throughout the United States. At all material times, Cigna was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to

Cigna's members and insureds under the NSA, plus pre- and post-judgment interest and costs of collection.

4. Under the NSA, effective January 1, 2022, SpecialtyCare can dispute the amounts Cigna paid for OON services furnished to patients enrolled in health benefit plans sold, insured, or administered by Cigna, through an independent dispute resolution ("IDR") process administered by the Centers for Medicare & Medicaid Services ("CMS"), where a neutral known as an "IDR entity" determines the amount that Cigna is required to pay SpecialtyCare on a particular claim for OON services.

5. If the IDR entity determines that Cigna underpaid SpecialtyCare, based on several factors the IDR entity considers, and awards SpecialtyCare additional amounts to ensure SpecialtyCare is fairly compensated, Cigna is required to make the additional payments to SpecialtyCare within 30 calendar days of that decision. 42 U.S.C. § 300gg-111(b)(1)(c).[1] The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

6. Having underpaid, or wholly failing to pay, each of the claims at issue in this action, Cigna forced SpecialtyCare to initiate IDR proceedings under the NSA to be fairly compensated. After the IDR entity awarded SpecialtyCare additional amounts in each of those proceedings, Cigna failed to pay SpecialtyCare the additional amounts owed. A tabulation identifying each IDR award, including the date the award was issued, the amount of the award, any payments to date of

---

[1] The relevant statutory provisions of the NSA, and its implementing regulations, are codified in three places: the Public Health Service Act ("PHS Act"), enforced by the Department of Health and Human Services; the Internal Revenue Code, enforced by the Department of the Treasury; and the Employee Retirement Income Security Act ("ERISA"), enforced by the Department of Labor. For ease of reference, this Complaint cites to the PHS Act provisions and implementing regulations.

the award, and the remaining amount Cigna owes of the award, together aggregate of these unpaid balances of $886,879 is attached hereto as **Exhibit A**.[2]

7.      SpecialtyCare has made numerous attempts to obtain payment from Cigna, but its attempts have been unsuccessful. No satisfactory defense or explanation has been forthcoming from Cigna. As a result, this action is necessary so that SpecialtyCare can secure enforcement of the binding IDR awards by final judgement against Cigna in a court of law as allowed by the NSA.

## II.      PARTIES

8.      SpecialtyCare, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business in Brentwood, Tennessee. SpecialtyCare has two affiliated entities: Remote Neuromonitoring Physicians, PC and Sentient Physicians, PC. Remote Neuromonitoring Physicians, PC is a professional corporation organized under the laws of the State of Pennsylvania whose principal place of business is located in Brentwood, Tennessee. Sentient Physicians, PC is a professional corporation organized under the laws of the State of Illinois whose principal place of business is located in Brentwood, Tennessee.

9.      Cigna is a corporation organized under the laws of the State of Connecticut, with its principal place of business located in Connecticut.

## III.      JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. Additionally, this Court has supplemental jurisdiction over the state-based claims because they "are so related to claims in the

---

[2] Given the volume of IDR awards at issue in this matter, SpecialtyCare has not attached copies of the IDR awards. However, SpecialtyCare's counsel will provide Cigna's counsel with the documentation for each individual IDR award upon request and will file the IDR awards with the Court as necessary.

action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a).

11. This Court has personal jurisdiction over Cigna because, among other reasons, Cigna operates, conducts, engages in, and carries on a business in Connecticut and maintains its principal place of business and other facilities in Connecticut. Additionally, Cigna is engaged in substantial—and not isolated activity—in Connecticut, both interstate and intrastate.

12. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b)(1) because, at all times material hereto, Cigna is a corporation conducting business in this Judicial District.

### IV.   FACTS

13. This dispute arises from Cigna's failure to reimburse SpecialtyCare for healthcare services it provided to Cigna's members, or patients who receive their insurance from self-funded ERISA plans for whom Cigna provides administrative services.

14. At all material times, Cigna was obligated to cover and reimburse SpecialtyCare for certain OON items and services rendered to Cigna's members and insureds—each of whom validly and in writing assigned his or her benefits claims to SpecialtyCare—under the federal NSA.

15. The NSA, which became effective January 1, 2022, requires health plans and issuers, such as Cigna, to provide coverage and reimburse providers directly for OON emergency healthcare services and non-emergency services furnished to insured patients by OON providers at participating hospitals and facilities.

16. Under the NSA, health plans and issuers have 30 calendar days from the date the bill is transmitted by the provider to pay or deny the claim. *See* 42 U.S.C. § 300gg-111(b)(1)(c). Plans and issuers are allowed to initially pay the OON provider whatever amount they choose (or

4

nothing at all). If the payment is too low, the provider may initiate an "open negotiation period" to negotiate a higher amount. *Id.* at § 300gg-111(c)(1)(A). If negotiations fail, the provider may initiate an IDR process where a third-party arbitrator, known as an IDR entity, determines the pricing on the claim(s). *Id.* at § 300gg-111(c)(1)(B).

17. The IDR process requires both parties to submit to the IDR entity position statements and proposed offers of payment for the items and services at issue. *Id.* § 300gg-111(c)(5)(B)(i)(I). The IDR entity then evaluates both proposed offers, based on a number of statutory factors, and selects one offer as the appropriate payment for the items and services at issue, and issues its written payment determination. *Id.* at § 300gg-111(c)(5)(C).[3]

18. Any additional payment required by the IDR entity's determination must be made directly to the provider **no later than thirty (30) calendar days** after the IDR entity issues its decision. *Id.* at § 300gg-111(c)(6); *see also* 45 C.F.R. § 149.510(c)(4)(ix).

19. The IDR entity's decision is "binding upon the parties involved" and not subject to judicial review absent circumstances described under the Federal Arbitration Act at 9 U.S.C. § 10(a)(1)-(4). *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)-(F); 45 C.F.R. § 149.510(c)(4)(vii)(A).

20. Since the implementation of the NSA, IDR entities have issued hundreds of decisions requiring Cigna to pay SpecialtyCare additional amounts pursuant to the NSA.

21. The IDR determinations at issue were rendered in accordance with the NSA, and are, therefore, binding upon Cigna. *Id*. § 300gg-111(c)(5)(E)-(F).

---

[3] If one of the parties fails to submit an offer within the required timeframes, the IDR entity must select the other party's offer as the final award. *See* Ctrs. For Medicare & Medicaid Servs., *Federal Independent Dispute Resolution (IDR) Process Guidance for Disputing Parties* § 6.2.2, (Oct. 2022), available at https://web.archive.org/web/20230106173733/https://www.cms.gov/files/document/federal-independent-dispute-resolution-guidance-disputing-parties.pdf.

22. Cigna, however, consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $886,879 in unpaid past due amounts owed to SpecialtyCare from Cigna (the "Debt"), which amount continues to rise.

23. Additionally, Cigna consistently failed to make timely payment within the NSA's required 30-calendar-day payment window, which begins when the IDR entity issues a decision finding that SpecialtyCare is owed additional payment. Indeed, many payments are overdue well-beyond the 30-calendar-day payment window.

24. SpecialtyCare has made numerous demands to Cigna for its payment on the Debt.

25. On multiple occasions, SpecialtyCare escalated the issue of Cigna's failure to timely remit payment for the Debt to Cigna and demanded payment for the same. Although not required by the NSA, SpecialtyCare provided a spreadsheet inventory of IDR entity determinations to Cigna to aid in the resolution of the Debt. SpecialtyCare also, from time to time, supplemented its inventory with copies of the IDR entities' determinations for each OON claim dispute at issue. Such inventory listed the following identifying information: IDR dispute number, CPT, Service Date, PCN, Payor Claim Number, Award Total, Decision Date, Expected Payment Date, Total Payments (to date), Still Owed, Patient Amount Paid.

26. SpecialtyCare diligently followed up with Cigna through multiple avenues. Cigna however, has frequently ignored SpecialtyCare's reminders for weeks at a time and has continued to not pay the Debt.

27. Despite SpecialtyCare's efforts, Cigna has not fully paid the Debt, and the past due amounts have continued to increase to the current amount of the Debt.

28. SpecialtyCare engaged and continues to engage in a series of transactions in an open account with Cigna.

106753550.1

29. SpecialtyCare provided and continues to provide OON items and services to Cigna's members and insureds, and it seeks reimbursement pursuant to the NSA, when necessary. Accordingly, SpecialtyCare also expects to enter further transactions with Cigna that may yield future IDR entity determinations that increase the Debt.

30. Cigna knows that it is statutorily required to pay IDR awards within thirty days. Upon information and belief, Cigna has not prioritized the compliance systems and personnel needed to meet its obligations under federal law, to the detriment of SpecialtyCare and to the advantage and unjust enrichment of Cigna, its stakeholders, and the health plans it serves.

31. Cigna knows that the longer it delays or denies payment, the more it can earn from the interest and/or investment income generated for its fully insured business. By delaying payment or not paying IDR awards, Cigna is able to keep the health plans' claims costs arbitrarily low, thus incentivizing plans to stay with them or using the results to market their services to other health plans.

32. Despite SpecialtyCare's numerous demands, Cigna has failed to satisfy the Debt.

### V.     CLAIMS FOR RELIEF

#### COUNT 1
#### PETITION TO CONFIRM ARBITRATION AWARDS
#### (9 U.S.C. § 9)

33. SpecialtyCare incorporates the foregoing paragraphs by reference.

34. Pursuant to 9 U.S.C. § 9, a party can petition a court to confirm an arbitration award.

35. Federal courts have authority to confirm IDR awards issued pursuant to the NSA under 9 U.S.C. § 9.

36. SpecialtyCare has met all the pre-conditions for enforcement of the IDR awards at issue.

37. Accordingly, SpecialtyCare is entitled to an Order confirming each arbitration award set forth in Exhibit A.

## COUNT 2
## ACTION FOR NONPAYMENT OF IDR DETERMINATION
## (42 U.S.C. § 300gg-111(c)(6))

38. SpecialtyCare incorporates the foregoing paragraphs by reference.

39. The determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or facility not later than 30 days after the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

40. SpecialtyCare is entitled to have the IDR determination converted into a federal judgment and enforced with the assistance of this Court in post-judgment collection efforts.

41. SpecialtyCare is further entitled to pre-judgment interest from the 31st day after each determination date until the date judgment is entered and post-judgment interest from the date after judgment is entered until payment is satisfied by Cigna.

42. Accordingly, SpecialtyCare is entitled to judgement in the amount of the Debt plus pre- and post-judgement interest and the costs of collection.

## COUNT 3
## IMPLIED RIGHT OF ACTION UNDER THE NSA

43. SpecialtyCare incorporates the foregoing paragraphs by reference.

44. The NSA includes an implied right of action against Cigna for the amount owed to SpecialtyCare.

45. Under the NSA, the determination of a certified IDR entity "shall be binding upon the parties involved" and that payment "shall be made directly to the nonparticipating provider or

facility not later than 30 days after the date on which such determination is made." *See* 42 U.S.C. §§ 300gg-111(c)(5)(E)(i)(I), 300gg-111(c)(6).

46. The NSA thus requires Cigna to pay SpecialtyCare the IDR Award balance owed for the services at issue in this case.

47. Accordingly, SpecialtyCare is entitled to judgement in the amount of the Debt plus pre- and post-judgement interest and the costs of collection.

## COUNT 4
## IMPROPER DENIAL OF BENEFITS
## (ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))

48. SpecialtyCare incorporates the foregoing paragraphs by reference.

49. SpecialtyCare has been assigned the right to payment and benefits from Cigna's members. This means SpecialtyCare steps into the shoes of, and is now considered, an ERISA beneficiary pursuant to 29 U.S.C. § 1002(8) for any self-funded plans Cigna is administering. As beneficiaries, SpecialtyCare is entitled to plan benefits, is the real party in interest as to these claims, and has standing to bring claims under ERISA.

50. Cigna improperly denied benefits by failing to pay the IDR awards within 30 days of each decision, as required by federal law. Cigna's actions constitute an abuse of discretion by: (a) not properly interpreting plan terms that are unambiguous; (b) exercising discretion over non-discretionary plan terms; and (c) denying SpecialtyCare payment and benefits under the plan terms.

51. SpecialtyCare is entitled to recover payment of plan benefits from Cigna pursuant to the IDR determinations

52. Cigna is responsible for NSA compliance for the plans it administers, including responding to IDR complaints and paying IDR awards, in connection with administering self-

funded benefits plans. Cigna breached its obligations to both the self-funded plans it administers and the plan beneficiaries by not paying IDR awards for services rendered to plan beneficiaries.

53. Cigna's denial of payment and benefits pursuant to the binding IDR determinations was not substantially justified, arbitrary and capricious, unsupported by substantial evidence, constituted an abuse of discretion, and wrongful under all circumstances.

54. SpecialtyCare, as assignee, hereby asserts a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to recover payment of the IDR awards from the self-funded plans administered by Cigna at issue.

55. Pursuant to 29 U.S.C. § 1132(g), SpecialtyCare further seeks an award of reasonable attorneys' fees and costs incurred in bringing this action.

56. Accordingly, for the reasons stated above, SpecialtyCare is entitled to judgement in the amount of the Debt, plus pre-and post-judgement interest and the costs of collection.

## COUNT 5
## UNFAIR TRADE PRACTICES
(Conn. Gen. Stat. §§ 42-110a *et seq.*)

57. SpecialtyCare incorporates the foregoing paragraphs by reference.

58. SpecialtyCare asserts a claim under Connecticut's Unfair Trade Practices Act ("CUTPA").

59. The CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

60. For CUTPA purposes, "trade" and "commerce" includes "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen. Stat. § 42-110a(4).

61. Under CUTPA, Cigna advertised, offered, sold, or distributed its trade or commerce in Connecticut.

62. CUTPA provides that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action … to recover actual damages." Conn. Gen. Stat. § 42-110g(a).

63. SpecialtyCare, via CUTPA, has a private right of action against Cigna because Cigna engaged in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" resulting in SpecialtyCare's "ascertainable loss of money or property."

64. Cigna has engaged in conduct that violates the Connecticut Unfair Insurance Practices Act ("CUIPA"). Such unlawful acts or practices include, but are not necessarily limited to: "failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies[,]" (Conn. Gen. Stat.§ 38a-816(6)(B)), "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies[,]" (*id*. at § 38a-816(6)(C)), "failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed[,]" (*id*. at § 38a-816(6)(E)), and "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" (*id*. at § 38a-816(6)(F)).

65. By failing to make full payments on the clearly binding IDR awards within thirty days as required by the NSA, Cigna is not promptly, fairly, or equitably settling the claims at issue. As such, Cigna is not making reasonable efforts to communicate about these claims, timely investigate these claims, or affirm these claims in violation of CUIPA.

11

66. Cigna's unfair or defective acts or practices were committed or performed with such frequency as to indicate a general business practice. *See* Ex. A (Cigna has failed to timely make full payments on at least 645 binding IDR awards that IDR entities awarded in SpecialtyCare's favor, and the number of unpaid IDR awards continues to grow).

67. For the reasons described herein, including by refusing to make payments in contravention to binding IDR awards, Cigna's unfair or defective acts or practices offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or have caused, and will continue to cause, substantial injury to consumers, competitors, or to other business persons.

68. As a direct and proximate result of Cigna's deceptive acts or practices, SpecialtyCare suffered ascertainable losses, including $886,879 and its loss of time and opportunity costs.

69. SpecialtyCare seeks relief under Conn. Gen. Stat. § 42-110g, including actual damages, punitive damages, attorneys' fees, expenses, and costs.

## COUNT 6
## ACCOUNT STATED

70. SpecialtyCare incorporates the foregoing paragraphs by reference.

71. Before SpecialtyCare initiated this action, the parties had business transactions between them in which they agreed on the entire amount due as the Debt.

72. SpecialtyCare has made frequent demands on Cigna for repayment of the Debt and to abide by the obligations described herein. SpecialtyCare has also provided Cigna with a statement of the balance Cigna owes on the Debt.

73. Cigna does not object to or contest the validity or quantum of the IDR entity determinations underlying the Debt.

74. The Debt has occurred, in full or in part, due to Cigna's equitable promises or misrepresentations to repay the Debt and/or remit payment pursuant to the IDR entity's determinations.

75. Cigna has failed to pay SpecialtyCare the $886,879 that is due and owing on the account and has retained the Debt for an unreasonable time.

76. Accordingly, SpecialtyCare is entitled to judgment in the amount of the Debt plus pre-and post-judgment interest and the costs of collections.

## COUNT 7
## UNJUST ENRICHMENT

77. SpecialtyCare incorporates the foregoing paragraphs by reference.

78. Cigna has been unjustly enriched by failing and refusing to pay the amounts due and owing to SpecialtyCare for services they provided to Cigna members.

79. Cigna received a benefit by receiving premiums and other consideration from the members, which in turn allowed the members to receive valuable medical care from SpecialtyCare with the expectation, by both the members and SpecialtyCare, that Cigna would pay the benefits it agreed to pay in exchange for the premiums and consideration provided.

80. Cigna received a benefit because SpecialtyCare discharged Cigna's obligations to its insured by providing SpecialtyCare's services.

81. Cigna has also received a benefit through its retention and/or delay of paying the binding IDR awards, for the longer Cigna delays or denies payment, the more it can earn from the interest and/or investment income generated for its fully insured business.

82. By delaying or denying payment it is obligated to pay, Cigna has also received the benefit of being able to keep its health plans arbitrarily low.

83. Cigna voluntarily accepted and retained the benefits conferred.

84. SpecialtyCare has been adversely impacted by providing valuable treatment to the members with the expectation of payment, only to be systematically and arbitrarily denied such payment by Cigna. In providing such care, SpecialtyCare incurred costs associated with the use and consumption of materials and supplies, expenditure of employee time and effort, and the cost of capital—all without receiving payment for its efforts, services, and investments.

85. Cigna has refused to pay for the medical treatment provided to members without justification and to SpecialtyCare's detriment, and it would be inequitable for Cigna to retain the benefits it has received under these circumstances without paying the value thereof to SpecialtyCare in the sum of approximately $886,879.

86. Cigna has been, and would continue to be, unjustly enriched if allowed to retain the benefits without paying the value thereof, and SpecialtyCare has suffered damages as a result.

## COUNT 8
## QUANTUM MERUIT

87. SpecialtyCare incorporates the foregoing paragraphs by reference.

88. SpecialtyCare rendered OON services and items to Cigna's members and insureds.

89. Cigna was obligated to provide coverage for the services and items provided by SpecialtyCare for its members and insureds.

90. Therefore, Cigna received a significant economic benefit conferred upon it by SpecialtyCare's services.

91. Cigna's knowledge, acceptance, and retention of the benefits conferred upon it is evidenced by, *inter alia*, Cigna receiving the SpecialtyCare invoices for its services.

92. Despite the binding IDR awards obligating Cigna to repay SpecialtyCare for the benefit rendered upon it, Cigna continues to improperly retain the amount reflected in Exhibit A.

93.     It would be inequitable for Cigna to retain the benefits of the services provided by SpecialtyCare without paying the full value of the benefits as set forth in the IDR awards, and SpecialtyCare has suffered damages as a result.

## VI.     PRAYER FOR RELIEF

WHEREFORE, SpecialtyCare prays for the following relief:

A.     Judgment be entered against Cigna on each claim asserted herein;

B.     An Order confirming each IDR award included in Exhibit A pursuant to 9 U.S.C. § 9;

C.     An Order enforcing the IDR awards and a judgment for the total amount outstanding plus pre- and post-judgment interest under 28 U.S.C. § 1961;

D.     An Order awarding SpecialtyCare its costs and reasonable attorneys' fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g) and/or Conn. Gen. Stat. § 42-110g;

E.     Judgment be entered against Cigna in an amount to be determined at a hearing of this cause, plus any applicable interest and reasonable attorneys' fees and costs; and

F.     For such other, further, and general relief to which SpecialtyCare may show itself entitled.

Dated: October 27, 2025.

        Respectfully submitted,

        */s/ Alina Levi*
        Alina Levi (ct31153)
        POLSINELLI PC
        600 Third Avenue, 42nd Floor
        New York, NY 10016
        Tel.: (212) 413-2868
        Fax: (212) 409-8609
        alevi@polsinelli.com

        Joshua D. Arters (*pro hac vice to be submitted*)
        Kevin T. Elkins (*pro hac vice to be submitted*)
        POLSINELLI PC
        501 Commerce Street, Suite 1300
        Nashville, Tennessee 37203
        615-252-3923
        jarters@polsinelli.com
        kelkins@polsinelli.com

        *Counsel for Plaintiffs*